IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.  1:17-cv-01555-WYD

JOHN SCHMIDT,

      Plaintiff,

v.

WELLS FARGO & COMPANY,
WELLS FARGO BANK, N.A.,
WELLS FARGO CAPITAL FINANCE, LLC,
GLOBAL ALTERNATIVE INVESTMENTS,
a division of WELLS FARGO INVESTMENT INSTITUTE, INC.,
and GLOBAL ALTERNATIVE INVESTMENT SERVICES, INC.,

      Defendants.

### DEFENDANTS' MOTION TO DISMISS

Defendants Wells Fargo & Company, Wells Fargo Bank, N.A., Wells Fargo Capital Finance, LLC, Global Alternative Investments, a division of Wells Fargo Investment Institute, Inc., and Global Alternative Investment Services, Inc. (collectively "Wells Fargo" or "Defendants") move to dismiss Plaintiff's Complaint in its entirety.  Because the defects the Complaint suffers cannot be cured, the Complaint should be dismissed with prejudice.

### I.  INTRODUCTION

Count I of Plaintiff's Complaint is based on an alleged oral promise of employment for a term of exactly five years.  According to Plaintiff, he was constructively discharged prior to the expiration of that five year term.  The Colorado Statute of Frauds (C.R.S. § 38-10-112(1)(a)) precludes this claim because a contract for a term of exactly five years can never be performed

within one year. Thus, because there is no enforceable contract, Plaintiff's employment was at-will. Also, Colorado does not recognize a claim for breach of the implied covenant of good faith and fair dealing in the employment context and therefore, as a matter of law, Count I should be dismissed with prejudice.

Counts II and III generally allege that Plaintiff was negligently put in an untenable position of having to quickly evaluate whether to sell securities or quit his job in order to comply with Wells Fargo's implementation of a portion of the Dodd-Frank Act that prohibits certain banking employees from holding certain securities. Plaintiff's claims are defective because they cannot overcome the fundamental problem that in order to establish actionable negligence, a plaintiff must first establish the existence of duty of care owed by the defendant. Colorado has never recognized a duty that requires employers to give its employees sufficient time to make difficult decisions. Much to the contrary, such a duty would be in direct conflict with the nature of at-will employment. Thus, and by way of example, an employer has the right, should it choose to exercise it, to inform an employee that s/he must either commit to take on an assignment in Siberia tomorrow or face termination. And while requiring employees to make difficult decisions in a short period of time may feel truly unkind to the employee, it is neither negligent nor unlawful. Instead, for better or for worse, it is the very nature of at-will employment. Separately, the claim is also barred by the economic loss rule.

Count IV blames Plaintiff's alleged *constructive discharge* on an alleged promise by his *investment advisors* that Plaintiff would have sufficient time to consider the tax consequences of having to sell his securities in order to comply with the Dodd-Frank Act. Plaintiff meets none of the elements of this claim. To begin with, constructive discharge is a wrongful act by an

employer, not by one's investment advisors.  Said another way, Plaintiff does not allege –nor could he—that his *investment advisors* at one Wells Fargo entity had authority to make promises concerning his employment at an entirely different Wells Fargo entity, or that his investment advisors had the power to make decisions concerning his employment.  Instead, Plaintiff acknowledges right in his Complaint that his supervisor (Scott Diehl) and his personal investment advisors (Liz O'Connor and Paul Hojnick) are entirely different people working for entirely different Wells Fargo entities.  (Compl., ¶¶ 13 and 27.)

Nor does Plaintiff allege a sufficiently specific promise.  Instead, he states generally that "he would be given the opportunity to assess his financial position at the end of 2016."  (Compl., ¶ 27.)  Plaintiff does not explain how his *investment advisors*, who made the alleged promise, reneged on the promise.  In fact, he does not allege facts that support even an inference that *anyone* actually reneged on the promise.  Instead, Plaintiff's Complaint places the blame for his constructive discharge squarely on the fact that "on December 8, 2016, Plaintiff received notice that Defendants planned to redeem his hedge fund investments as of December 31, 2016." (Compl., ¶ 29.)  To be sure, December 31, 2016 is the very end of 2016, and, therefore, Plaintiff did have the ability to "assess his financial position" by "the end of 2016."

To the extent we are to understand Plaintiff to complain that he was supposed to have until July of 2017 to sell his securities, he fails to allege how he relied on the alleged promise "to his detriment."  Nowhere does Plaintiff's Complaint inform us how Plaintiff changed his behavior in any way in reliance on the alleged promise.  Said another way, Plaintiff has not alleged that, now that July 2017 has come and gone, he has evaluated the tax consequences and concluded that he should have sold his securities in 2016 rather than resigning after all.  This, of

course, goes to the very heart of his estoppel claim because the key to any estoppel claim is a change in behavior knowingly motivated by the promisor.  With no change in behavior (i.e., no allegation that now that he has analyzed the tax consequences, he knows that quitting was the wrong thing to do, and that selling his securities would have been the right thing to do), there can be no estoppel.

## II.   ALLEGATIONS OF THE COMPLAINT[1]

Plaintiff was employed by Defendants from July 1, 2011 until he resigned in December 2016.  (Compl. ¶¶ 10, 14, 17, 32.)  Plaintiff was initially employed under a May 25, 2011 **written** employment agreement that set forth a term of five (5) years (which expired in June 30, 2016).  (Compl. ¶¶ 10, 17.)  Plaintiff subsequently accepted the position of Head of Supply Chain Finance.  He claims that his supervisor at Wells Fargo **orally** promised him a term of employment for **exactly** five years when he took on that role.  (Compl. ¶ 16.)

Plaintiff held a significant personal investment in Wells Fargo securities.  (Compl. ¶ 25.) All parties agree that Plaintiff was subject to the so-called Volcker Rule, found in the Dodd-Frank Act, which generally prohibits certain bank employees from owning certain types of securities sponsored by the bank.  *See generally* 12 U.S.C. § 1851 (d)(1)(G)(vii). (Compl. ¶¶ 22, 25.)  The Volcker Rule became effective on July 21, 2012.  The deadline for complying with the rule was extended by the Federal Reserve to July 21, 2017.  (Compl. ¶¶ 23, 24.)

Plaintiff alleges that his personal wealth advisor, Liz O'Connor, and his personal investment manager, Paul Hojnick, assured him he would have an opportunity at the end of 2016 to assess his financial position and that he would have several months into 2017 to take any

---

[1] While Wells Fargo disputes many of Plaintiff's allegations delineated in this section, it takes them as true, as it must, for purposes of this motion.

action required under the Volcker Rule. (Compl. ¶ 27.) On December 8, 2016, one or more unspecified Defendants gave Plaintiff notice that they planned to redeem his hedge fund investments as of December 31, 2016. (Compl. ¶ 28.) Plaintiff claims that the accelerated deadline was "arbitrary" and that it put him in "an untenable position of choosing whether to remain employed and potentially face unknown colossal tax and/or opportunity cost consequences by having to redeem his investments without the opportunity to conduct due diligence prior to the redemption, or to resign from his position before the five-year term of his employment agreement." (Compl. ¶ 31.) Plaintiff claims Ms. O'Connor requested that Plaintiff submit his resignation to prevent the redemption and he complied with the request. (Compl. ¶ 32.)

### III.   ARGUMENT

**A. Standard For Dismissal Under Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A motion filed under Rule 12(b)(6) tests whether a claimant has properly stated a claim. *See Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995). In deciding a motion to dismiss, the Court considers all allegations of the complaint as true and will draw all reasonable inferences in favor of the plaintiff. *Id.* Dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts to support his or her claim that would entitle the plaintiff to relief. *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). Further, a claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) "either because it asserts a legal theory not cognizable as a matter of law or because the claim fails to allege sufficient facts to support a

5

cognizable legal claim." *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004), *aff'd sub nom. Golan v. Gonzales*, 501 F.3d 1179 (10th Cir. 2007).

### B. Count I (Breach Of Contract) Is Precluded By The Statute Of Frauds.

Plaintiff's claim for breach of contract requires him to prove: "(1) the existence of a contract; (2) performance by Plaintiff or some justification for nonperformance; and (3) failure to perform the contract by Defendants." *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1057 (Colo. 1992) (internal citations omitted). Plaintiff cannot prove the first element because any oral agreements for a specific term in excess of one year, such as the five year term Plaintiff alleges, are rendered void by the Statute of Frauds. C.R.S. § 38-10-112(1)(a) (voiding any contract "that by the terms is not to be performed within one year after the making thereof").

A contract for an exact term of five years can never be performed in one year. *Whatley v. Crawford & Co.*, 15 F. App'x 625, 635 (10th Cir. 2001) (dismissing employee's oral contract claim "because the statute of frauds permits enforcement only of contracts that may be fully performed within one year. . ."); *Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1027 (D. Colo. 2014) (holding that by "its terms a contract guaranteeing a specified yearly salary to an individual which was to extend for each of three separate years cannot have been fully performed within a year."); *Gill-Mulson v. Eagle River Fire Prot. Dist.*, No. 11-CV-01896-RBJ-KLM, 2013 WL 258745, at *3 (D. Colo. Jan. 23, 2013) ("An agreement for continued employment for two years cannot be performed within one year.") Therefore, any oral promise was void as a matter of law, and there is no contract upon which Plaintiff can base his contract claims.

Separately, Plaintiff's claim for breach of the covenant of good faith and fair dealing is barred (1) because the contract upon which it is based is voided by the Statute of Frauds, as

discussed above, and (2) because, as a matter of law, claims for breach of the covenant of good faith and fair dealing is not cognizable in the employment context. *See Marsh v. Delta Air Lines, Inc.*, 952 F. Supp. 1458, 1464-65 (D. Colo. 1997) (Daniel, J.) ("Defendant argues that under Colorado law there is no cause of action for breach of implied covenant of good faith and fair dealing in employment situations, and that a cause of action for breach of express covenant of good faith and fair dealing is equivalent to a claim of Breach of Contract and should be subsumed into claim three. I agree."). Therefore, whether considered under the breach of contract rubric, or the covenant of good faith and fair dealing rubric, Plaintiff's claim based on an alleged oral promise of a contract for a term of exactly five years fails and can never be cured.

### C. Counts II (Negligence) And III (Negligent Misrepresentation) Should Be Dismissed Because There Is No Cognizable Duty Owed To Plaintiff To Avoid Requiring Him To Make Difficult Decisions In Unreasonably Short Periods Of Time.

To state a claim for negligence, a plaintiff must show "a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause relationship between the breach and the injury." *Ayala v. United States*, 846 F. Supp. 1431, 1437 (D. Colo. 1993), aff'd, 49 F.3d 607 (10th Cir. 1995). Claims II and III are incurably defective because Wells Fargo did not owe Plaintiff the duty of care at the root of Plaintiff's claims. *See Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005) ("A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit.").

Notably missing from Count III is the identification of any duty allegedly owed by Defendants to Plaintiff at all. However, giving him the benefit of the doubt, Plaintiff generally alleges later in the Complaint that "Defendant owed Plaintiff a duty of reasonable care with respect to his employment and his investments" (though he still fails to identify the specific

7

duty). (Compl. ¶ 59.) Given that Plaintiff did not have an enforceable employment contract for a five year term (for the reasons specified in section B, above) Plaintiff defaults to being an at-will employee under Colorado law. *Anderson v. Regis Corp.*, 185 F. App'x 768, 771 (10th Cir. 2006) (holding that absent an "implied contract or promise" plaintiff "was an employee-at-will under Colorado law." ); *Davies v. Philip Morris, USA*, 863 F. Supp. 1430, 1440 (D. Colo. 1994) (holding that in Colorado an employee is presumed to be employed "at will" absent a showing of "an express stipulation as to the duration of employment in exchange for consideration over and above her existing performance.") (internal citations omitted).

The idea that an employer owes a duty to each and every one of its at-will employees not to require them to make even extremely important decisions in unreasonable periods of time is in irreconcilable conflict with the concept of at-will employment. It is the nature of at-will employment to allow the employer latitude to act arbitrarily, so long as it does not violate some other law (like Title VII, the ADEA, or the like). Thus, Colorado has long recognized the ability of employers to fire employees arbitrarily,[2] reduce their salaries without warning,[3] or demote them,[4] all without warning. Therefore, Plaintiff cannot identify any duty owed by Defendants under the facts alleged and the claims should be dismissed with prejudice.

---

[2] *Anderson*, 185 F. App'x at 771 ("Employment in Colorado is generally at-will, meaning that an employee can be fired at any time without cause or notice.").
[3] *Salimi v. Farmers Ins. Group*, 684 P.2d 264, 265 (Colo. App. 1984); *Green v. Edward J. Bettinger Co.*, 608 F.Supp. 35, 42 (E.D.Pa. 1984) ("the undoubted right to terminate an at-will contract necessarily includes the right to insist upon changes in the compensation arrangements as a condition of employment.").
[4] *Salimi*, 684 P.2d at 265 (in the absence of an agreement prohibiting demotion, "employment agreement was terminable at the will of either party because there was no fixed term of employment.... [and] plaintiff's continued job status, *including demotion*, was likewise determinable at the will of the defendant.") (emphasis added).

In addition, even if Plaintiff could identify a duty owed by Defendants, the claims still fail because they are barred by Colorado's economic loss rule. *See Town v. Alma v. Azco Const., Inc.,* 10 P.3d 1256, 1263 (Colo. 2000). In the *Town* case, the Colorado Supreme Court ruled that: "a party suffering only economic loss from the breach of an expressed or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1264; *see also BRW, Inc. Dufficy & Sons, Inc.* 99 P.3d 66, 70 (Colo. 2004); *Grynberg v. Agritech Inc.,* 10 P.3d 1267, 1269 (Colo. 2000). Plaintiff only asserts economic losses in his Complaint. Therefore, his tort claims are barred by the economic loss rule.

### D. Count IV (Promissory Estoppel) Fails To Allege A Claim

In order to prevail on his promissory estoppel claim, Plaintiff must prove: (1) Defendants made a promise that they *reasonably* knew or should have known would induce action or forbearance on the promise; (2) Plaintiff in fact *reasonably* relied on the promise to his detriment; and (3) injustice can be avoided only by enforcing the implied promise. *D & R's Aspen Ret. Plan, LLC v. DeGraff*, 2010 WL 4024013, at *4 (D. Colo. Oct. 12, 2010). Plaintiff fails to plead facts in support of any of the three required elements to proceed on his promissory estoppel claim.

In regards to the first element, Plaintiff alleges no facts to show that the two *investment advisors* had authority to make any promises on behalf of any of the Defendants concerning Plaintiff's *employment*. *See Hansen v. Colorado Sch. of Mines*, 42 Colo. App. 292, 295, 599 P.2d 928, 930 (1979) ("Persons dealing with public corporations do so at their peril, and are deemed to have notice of the proper exercise of the powers vested in the corporation."). In fact,

Plaintiff unambiguously alleges that the only people who told him he would have more time to evaluate his options were his wealth advisor, Liz O'Connor, and his investment manager, Paul Hojnick, not his supervisor, Scott Diehl, or anyone else in his chain of supervisory command. (Compare Compl., ¶ 27 with Compl., ¶¶ 13-14, 19-20). This defect renders his claim incurable because Plaintiff can never change the fact that his investment advisors cannot make promises that bind his employer in the context of wrongful termination/constructive discharge.

In addition, Plaintiff also fails to allege that anyone (with or without authority) made a specific and enforceable promise. The alleged statements by his investment advisors, made at some undefined point in time, do not constitute promises, but were merely vague statements that are insufficient to sustain a promissory estoppel claim. *See Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465 (10th Cir.1994) (holding that mere "vague assurances" are unenforceable).

The alleged promise is found in paragraph 27 of the Complaint, where Plaintiff alleges that he was informed by his investment advisors that "he would be given the opportunity to assess his financial position at the end of 2016." This alleged statement does not amount to a sufficiently definite promise to bind anyone, particularly when it is viewed in the context of what Plaintiff claims actually happened. Namely, Plaintiff blames his constructive discharge on the fact that "on December 8, 2016, Plaintiff received notice that Defendants planned to redeem his hedge fund investments as of December 31, 2016." (Compl., ¶ 29.) There is nothing sufficiently definite about the alleged promise (by his investment advisors) that was violated (by entirely different people: his supervisors).

Instead, his Complaint makes clear that he in fact had until December 31, 2016 to do whatever research or investigation he needed to do before his securities would be redeemed on

December 31, 2016.  Because Plaintiff does not provide any specifics as to any of the terms that were promised, or how the specific promise was violated by the party that made the promise, he cannot proceed on his promissory estoppel claim.  *Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. App. 1998) (holding that an alleged promise "must be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms.").

In regards to the second element, detrimental reliance, Plaintiff does not allege how he in fact changed his behavior as a result of anything anyone (again, with or without authority) said to him.  Specifically, he does not allege that, having now done the financial analysis, he would have sold his shares in 2016, and remained employed rather than quitting, had he only had more time to analyze the tax consequences.  Of course, it is precisely this sort of change in behavior that one must demonstrate to support an estoppel claim.  *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) ("Reliance can be shown where a party alters his or her position as a consequence of another's conduct.").

In addition, the claim fails because Plaintiff's alleged damages are based on a void employment contract and thus he cannot show the third element of a promissory estoppel claim, namely that his reliance on Defendants' promises resulted in injustice.  His alleged damages of lost wages result from his decision to resign his employment, not from his decision to wait to evaluate his financial situation.  This results in two incurable problems: (1) Plaintiff cannot establish harm related to the promise itself (i.e. investment losses or tax problems), and (2) constructive discharge, in addition to being untethered to the promise that forms the basis of the claim, does not exist with respect to at-will employees.

## IV.  CONCLUSION

Defendants respectfully request that the Court enter an Order dismissing Plaintiff's Complaint with prejudice.  Defendants also request that this Court award them their reasonable attorneys' fees pursuant to C.R.S. § 13-17-201.

Respectfully submitted: August 9, 2016

*s/ Rachelle E. Hill*
Darren E. Nadel
Rachelle E. Hill
LITTLER MENDELSON, P.C.
A Professional Corporation
1900 Sixteenth Street
Suite 800
Denver, CO  80202
Telephone:  303.629.6200
Fax:  303.629.0200
Email:  dnadel@littler.com
            rehill@littler.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2017, a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS** was filed and served using the Court's CM/ECF filing system on all parties of record.

*/s/ Julie A. Walterman*