IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-01555-RBJ

JOHN SCHMIDT,

    Plaintiff,

v.

WELLS FARGO & COMPANY;
WELLS FARGO BANK, N.A.;
WELLS FARGO CAPITAL FINANCE, LLC;
GLOBAL ALTERNATIVE INVESTMENTS,
a division of Wells Fargo Investments Institute, Inc.; and
GLOBAL ALTERNATIVE INVESTMENT SERVICES, INC.,

    Defendants.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on defendants Wells Fargo & Company's; Wells Fargo Bank, N.A.'s; Wells Fargo Capital Finance, LLC's; Global Alternative Investments'; and Global Alternative Investment Services, Inc.'s ("defendants") motion to dismiss. ECF No. 16. For the reasons stated below, the Court GRANTS defendants' motion.

## I. BACKGROUND

Plaintiff John Schmidt is a former Wells Fargo employee. ECF No. 1 at 4. Before joining Wells Fargo, Mr. Schmidt co-founded Castle Pines Capital, LLC ("Castle Pines"). *Id.* at 1. After Wells Fargo acquired Castle Pines, Mr. Schmidt entered into an employment agreement with Wells Fargo on May 25, 2011 (the "2011 Agreement") whereby Mr. Schmidt would remain

1

employed as the Managing Partner of Castle Pines for a period of five years. *Id.* at 4. In April of 2016, as the 2011 Agreement was nearing expiration, Wells Fargo asked Mr. Schmidt to apply for a position in which he would assist with another large Wells Fargo acquisition. *Id.* Mr. Schmidt declined and instead chose to resign from Wells Fargo. *Id.* After the acquisition occurred, Mr. Schmidt engaged in employment discussions with Wells Fargo executives which resulted in his being offered the position of Head of Supply Chain Finance for Wells Fargo Capital Finance, LLC, effective May 5, 2016. *Id.*

The terms of Mr. Schmidt's new position were set forth in oral communications and in a May 5, 2016 letter sent to Mr. Schmidt by Scott Diehl, Executive Vice President and Head of Global Solutions Group with Wells Fargo Capital Finance, LLC. *Id.* According to Mr. Schmidt, the parties orally agreed that his term of employment would be for five years. *Id.* at 5. Additionally, the May 2016 letter allegedly provided partial terms of Mr. Schmidt's employment, including his annual base pay and bonuses. *Id.* at 4. On August 25, 2016 Wells Fargo disseminated a press release announcing that Mr. Schmidt would be leading the Supply Chain Finance Group. *Id.* at 5. Mr. Diehl also issued statements in September 2016 touting Mr. Schmidt's experience and expertise and noting that Wells Fargo was "fortunate to have him leading this group." *Id.*

Unbeknownst to Mr. Schmidt, this honeymoon period would soon draw to a close as implementation of the so-called "Volcker Rule" drew closer. Codified in section 619 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Volcker Rule prohibits an employee of a banking entity—like Mr. Schmidt—from investing in certain types of funds sponsored by the banking entity unless the employee is directly engaged in providing investment

advisory or other services to the covered fund. *Id.* at 6 (citing 12 U.S.C. § 1851(d)(1)(G)(vii)). The restrictions of the Volcker Rule became effective on July 21, 2012, but in July 2016 the deadline for banking entities to comply with the Rule was extended to July 21, 2017. *Id.*

Mr. Schmidt was subject to the requirements of the Volcker Rule because he had "significant assets" managed in Wells Fargo's securities and was a Wells Fargo employee. *Id.* At the crux of the instant case are the actions undertaken by Mr. Schmidt to comply with the Volcker Rule. Mr. Schmidt states that he was "assured by Wells Fargo Senior Vice President, Wealth Advisor Liz O'Connor's and Investment Manager Paul Hojnick's conduct, actions, and representations that he would be given the opportunity to assess his financial position at the end of 2016 and would have several months into 2017 to take any action required under the Volcker Rule." *Id.* Specifically, Mr. Schmidt alleges that Wells Fargo's plan was to value his hedge fund investments after the end of 2016, determine the impact of selling his assets, and allow Mr. Schmidt time to make a decision in 2017 about whether or not to sell his assets to ensure compliance with the Volcker Rule. *Id.* at 6–7. At some point the plan changed.

Despite being assured that his hedge fund investments would not be redeemed until "several months into 2017," Mr. Schmidt alleges that he received notice from Wells Fargo on December 8, 2016 that Wells Fargo would redeem his hedge fund investments on December 31, 2016. *Id.* at 7. Mr. Schmidt attempted to elicit an explanation for the accelerated redemption timeline but claims that "no satisfactory answer was provided." *Id.* Mr. Schmidt alleges that the accelerated timeline put him in the "untenable position of choosing whether to remain employed and potentially face unknown colossal tax and/or opportunity cost consequences by having to redeem his investment without the opportunity to conduct due diligence prior to the redemption,

3

or to resign from his position before the [end of the] five-year term of his employment agreement." *Id.* On December 13, 2016 Ms. O'Connor requested that Mr. Schmidt submit his resignation and Mr. Schmidt complied. *Id.* Mr. Schmidt asserts that this interaction amounted to constructive discharge. *Id.* at 2, 9.

Mr. Schmidt filed a complaint on June 26, 2017, asserting four claims: (1) breach of contract; (2) negligent misrepresentation; (3) negligence; and (4) promissory estoppel. *See id.* at 8–13. On August 9, 2017 Wells Fargo filed a motion to dismiss Mr. Schmidt's complaint in its entirety. ECF No. 16. That motion has been fully briefed. *See* ECF Nos. 16, 24, 27.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

Defendants move to dismiss plaintiff's complaint in its entirety for failure to state a claim. ECF 16 at 1. Defendants argue that each of plaintiff's four counts should be dismissed as a matter of law. *Id.* I will address each count in turn.

**A. <u>Count I: Breach of Contract</u>.**

In his complaint, plaintiff asserts that he entered into a five-year employment contract with defendants on May 5, 2016 which incorporated both oral and written terms. ECF No. 1 at 8. Plaintiff contends that defendants' accelerating his investment redemption timeline—which resulted in his resigning—amounted to a constructive discharge, thereby breaching the terms of his employment contract.[1] ECF No. 16 at 9–10. Plaintiff further asserts that defendants' actions constituted a breach of the implied covenant of good faith and fair dealing that is inherent in every contract under Colorado law. *Id.* at 10. Defendants argue in their motion to dismiss that Colorado's statute of frauds renders plaintiff's alleged contract void, precluding his breach of contract claim and his related claim for breach of the implied covenant of good faith and fair dealing. ECF No. 16 at 1–2. Because I agree with defendants that plaintiff has failed to plead facts supporting the existence of a valid contract, I find that his breach of contract claim and his claim for breach of the implied covenant of good faith and fair dealing both fail.

1. <u>Colorado's Statute of Frauds</u>.

Colorado's statute of frauds provides that, with exceptions not relevant here, "[e]very agreement that by the terms is not to be performed within one year after the making thereof" is

---

[1] In his complaint, plaintiff provides an alternative theory of contract formation, namely that because he continued to perform under the terms of the 2011 Agreement, he and defendants entered into an implied contract with the same terms. ECF No. 1 at 8. Plaintiff has apparently abandoned this argument by not raising it in response to defendants' motion to dismiss. *See, e.g.*, *Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 932–33 (10th Cir. 2015) ("[Plaintiff] abandoned the policy argument when she failed to argue it in response to the motion to dismiss.").

5

void. C.R.S. § 38-10-112(a). The Colorado Supreme Court construes the one-year provision narrowly, applying it to "only those agreements that exclude, by their very terms, the possibility of performance within one year." *Prof'l Bull Riders, Inc. v. AutoZone, Inc.*, 113 P.3d 757, 761 (Colo. 2005). Although several partial terms were conveyed in Mr. Diehl's May 2016 letter, the parties do not dispute that the alleged employment contract in this case was an oral agreement. *See* ECF Nos. 16, 24. Thus "the issue is whether, based on the undisputed facts, the employment contract could have been fully performed according to its terms within one year." *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 658 (D. Colo. 2005). An agreement for continued employment for a period of five years cannot be performed within one year. *See Gill-Mulson v. Eagle River Fire Protection Dist.*, No. 11-CV-01896-RBJ-KLM, 2013 WL 258745, at *3 (D. Colo. Jan. 23, 2013) ("[A]n agreement for continued employment for two years cannot be performed within one year."). Therefore, the alleged oral contract is void under the plain wording of the statute.

Plaintiff argues that the statute of frauds does not apply because his oral contract was in fact capable of being performed in less than one year. ECF No. 24 at 4. In particular, plaintiff asserts in response to the motion to dismiss that because he could be "terminate[d] for cause, such as for unsatisfactory performance, at any time," his contract could have been performed within one year. *Id.* at 5. Indeed, "[t]he general rule in Colorado is that contracts of employment for 'so long as the employee performs satisfactorily' are not barred by the statute of frauds." *Vinton*, 232 F.R.D. at 658 (quoting *Pickell v. Ariz. Components Co.*, 902 P.2d 392, 397 (Colo. App. 1994) *rev'd on other grounds*, 931 P.2d 1184 (Colo. 1997)). However, as defendants point out, plaintiff failed to plead any facts in his complaint that would support his assertion that the

oral agreement in this case was such an agreement. *See* ECF No. 27 at 2. Instead, plaintiff's complaint expressly pleads that his employment agreement contemplated a five-year term. ECF No. 1 at 8. I am not convinced by plaintiff's argument in response to the motion to dismiss that because the complaint contained the vague assertion that he "adequately performed his job responsibilities," plaintiff had by implication pled that the employment agreement was of the type contemplated in *Vinton*. *See* ECF No. 24 at 5–6. Instead, I agree with defendants that plaintiff has improperly attempted to "'add[] factual allegations in response to Defendant's . . . motion to dismiss.'" ECF No. 27 at 2 (quoting *Sudduth v. Citimortgate, Inc.*, 79 F. Supp. 3d 1193, 1198 (D. Colo. 2015)). For this reason alone, plaintiff's complaint fails to plausibly plead the type of oral agreement that might survive the statute of frauds.

However, even if plaintiff had plausibly pled that the five-year oral agreement in his case could be terminated for cause, he has failed to provide authority indicating that such an agreement would be immune from the statute of frauds. The cases plaintiff cites in support of the notion that terminating a contract within a year might constitute "performing" that contract are inapposite. In *Professional Bull Riders* the Colorado Supreme Court found that the statute of frauds did not invalidate an oral agreement in which the defendant agreed to sponsor the plaintiff's event for two seasons, an obligation that would necessarily take more than one year. 113 P.3d at 761. However, that agreement contained a provision expressly allowing the defendant to *elect to complete* its performance and terminate the contract within one year of entering the agreement. *Id.* The Court observed that the agreement "did not purport to grant [the defendant] an option to terminate the agreement at will or upon the occurrence of some particular event; rather it provided [the defendant] with two alternative ways of satisfying its obligations as

7

contemplated by the agreement," one of which would arise within a year. *Id.* Unlike in *Professional Bull Riders*, the plaintiff in this case has not alleged that the oral agreement at issue contained an affirmative election provision that contemplated termination within one year as an alternative method of satisfying the contract. Thus, because the court in *Professional Bull Riders* was not "decid[ing] whether an option to terminate a contract must always be construed as an alternative and sufficient means of performance," this case would not support plaintiff's argument even if he had sufficiently alleged that such an option was present in his case. *Id.*

*Vinton* is similarly inapt. In that case the oral agreement provided for employment until the plaintiff's retirement, but the plaintiff testified that the agreement also contemplated that he could be terminated for performance issues. *Vinton*, 232 F.R.D. at 658. A different judge in this Court determined that the statute of frauds did not invalidate the agreement in *Vinton*. *Id.* at 659. This determination was based in part on the following rule from *Pickell v. Arizona Components Co.*, 902 P.2d at 397:

> Contracts for 'permanent' employment include employment for life, until retirement, until the employee leaves voluntarily, so long as the employee performs satisfactorily, or so long as the employer remains in business. These contracts do not violate the statute of frauds because any of these events could occur within one year.

As *Pickell* makes clear, oral agreements contemplating *indefinite* terms of employment can be satisfied within a year should the triggering event occur during that time. Thus, these agreements will indeed have been fully performed "according to their terms" within a year should the contemplated event arise during that time. The oral agreement in *Vinton* was defined by two indefinite terms: the plaintiff's retirement or his unsatisfactory performance. 232 F.R.D. at 659. In this case, in contrast, the clear terms of the oral agreement contemplated a five-year

8

term of employment, rather than an indefinite term that could fall either within or outside of one year. As such, unlike in *Vinton* or *Professional Bull Riders*, the requirements of the oral agreement at issue in this case could not be performed within one year. Instead, by the clear terms of the agreement the requirements were to be completed in five years. The statute of frauds therefore voids this oral agreement.

    2. <u>Applicability of the Partial Performance Exception</u>.

Alternatively, plaintiff alleges that if the Court finds that Colorado's statute of frauds applies to the contract between him and defendants, then the part performance doctrine precludes the application of the statute to this case. ECF No. 24 at 8. The part performance doctrine precludes application of the statute of frauds "if there is part performance of an oral contract which is: (1) substantial; and (2) required by, and fairly referable to no other theory besides that allegedly contained in the oral agreement." *Nelson v. Elway*, 908 P.2d 102, 108 (Colo. 1995) (citing *L.U. Cattle Co. v. Wilson*, 714 P.2d 1344, 1347 (Colo. App. 1986)). The Colorado Supreme Court explains that the "rule is based on the premise that the conduct constituting the partial performance must convincingly evidence the existence of the oral agreement." *Id.* at 109 (citing John D. Calamari & Joseph M. Perillo, Contracts § 19–15, at 799 (3d ed. 1987)). Here plaintiff argues that he partially performed the oral contract and that his performance was "substantial and required by the oral agreement." ECF No. 24 at 8. Plaintiff's argument fails.

First, under Colorado law the partial performance exception to the statute of frauds does not apply to oral employment contracts. "In the context of an oral contract for at-will employment, in which the defense of statute of frauds has been raised . . . neither the partial performance of services nor the payment of compensation will be deemed sufficient to avoid the

9

bar of the statute as to enforcement of the entire contract." *Chidester v. Eastern Gas and Fuel Assocs.*, 859 P.2d 222, 224 (Colo. App. 1992); *see also Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1465 (10th Cir. 1995) (concurring with *Chidester* in the context of "oral employment contract[s]"). The oral agreement between plaintiff and defendants in this case was for employment and was governed by Colorado law, and as noted, plaintiff failed to allege in his complaint that the agreement was terminable only for cause rather than at-will. Thus, even accepting all of plaintiff's well-pleaded facts as true, plaintiff cannot state a plausible claim that the partial performance doctrine precludes application of Colorado's statute of frauds in his case.

Even if the partial performance exception applied to employment cases, plaintiff has failed to plausibly plead *substantial* part performance in this case. As evidence of his substantial part performance, plaintiff merely states that he "was employed as Head of Supply Chain Finance for several months in 2016" and that he received "payment from [defendants] consistent with the employee-employer relationship established in the oral contract." ECF No. 24 at 8. A greater factual showing is required. For example, in *Nelson* the Colorado Supreme Court held that selling automobile dealerships, selecting a corporate name, and providing information about a new incorporation to an attorney were not substantial enough steps to trigger application of the partial performance doctrine for an alleged oral agreement to sell automobile dealerships. *Nelson*, 908 P.2d at 109; *see also Judson v. Black*, No. 10-CV-00504-CMA-KMT, 2015 WL 134172 at *4, (D. Colo. Jan. 9, 2015) (holding that plaintiff's funding and closing of real estate transactions was not "convincing evidence" of oral agreements relating to the sale of real property). Here the only evidence supplied by plaintiff to support his partial performance is that

he worked for several months out of a five-year contract, and that he was paid. These facts fail to meet the "substantial" standard illustrated in *Nelson* and *Judson*.

Because the statute of frauds invalidates the oral agreement plaintiff entered into with defendants, and because the partial performance doctrine does not apply in this case, plaintiff has failed to plead the existence of a valid contract with defendants. As a result, plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing must fail.[2] Accordingly, defendants' motion to dismiss plaintiff's breach of contract claim is GRANTED and the claim is dismissed.

### B. Counts II and III: Negligent Misrepresentation and Negligence.

In the alternative, plaintiff claims that (1) defendants' promise that "he would be given the opportunity to assess his financial position at the end of 2016 and would have several months into 2017 to take any action required under the Volcker Rule" amounted to negligent misrepresentation; and that (2) defendants were negligent when they "unreasonably and arbitrarily accelerated the redemption date for [his] hedge fund investments." ECF No. 1 at 10–11. Defendants counter that plaintiff's negligence claims are defective because he cannot establish the existence of a relevant duty defendants owed plaintiff. ECF No. 16 at 7. I agree with defendants.

"In Colorado, the elements of a negligence claim consist of . . . a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause

---

[2] "[A] necessary predicate for a claim for breach of the covenant of good faith and fair dealing is the existence of a contract, 'as the claim generally must be tied to a specific contract term that allows for discretion on the part of either party.'" *Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1029 (D. Colo. 2014) (quoting *Occusafe, Inc. v. EG & G Rocky Flats, Inc.*, 54 F.3d 618, 624 (10th Cir. 1995) (internal citation and quotation marks omitted)). Because plaintiff has failed to plead the existence of a contract in this case, his claim for breach of the implied covenant of good faith and fair dealing necessarily fails.

relationship between the breach and the injury."[3] *Ayala v. United States*, 846 F. Supp. 1431, 1437 (D. Colo. 1993), *aff'd*, 49 F.3d 607 (10th Cir. 1995). "A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit." *Keller v. Koca*, 111 P.3d 445, 447–48 (Colo. 2005) (internal citation omitted). The Court must determine as a matter of law whether a defendant in a particular action owes the plaintiff a legal duty. *Id.* Thus, plaintiff's failure to establish as a matter of law that defendants owed him a duty is fatal to his claims of negligence and negligent misrepresentation.

Whether defendants owed plaintiff a duty depends on the nature of their employment relationship.[4] In the absence of a valid employment contract (for the reasons discussed above), Colorado law directs that plaintiff was employed "at will." *Anderson v. Regis Corp.*, 185 F. App'x 768, 771 (10th Cir. 2006) ("Employment in Colorado is generally at will."). When an individual is employed at will, his "'employment may be terminated by either party without cause and without notice,'" and his "'termination does not give rise to a cause of action.'" *McGuire v. Continental Airlines, Inc.*, 210 F.3d 1141, 1145 (10th Cir. 2000) (quoting *Crawford Rehab. Servs. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997)). Further, "employers operating under at-will employment principles are generally free to discharge employees for any reason, even if that reason is wrong or incorrect, as long as the reason asserted does not trigger a recognized exception to the at-will termination doctrine." *Wisehart v. Meganck*, 66 P.3d 124, 127 (Colo. App. 2002). Moreover, courts recognize that "a special relationship that would give

---

[3] The elements of a negligent misrepresentation claim are distinct from the elements of negligence, *see Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011), but because both parties treat this claim under the general "negligence" framework, the Court will consider any distinct arguments plaintiff may have had with respect to the negligent misrepresentation claim to have been waived.

[4] Plaintiff does not assert that defendants owed him any duty in their capacities as his investment managers or advisors, instead asserting only employment-related duties. *See* ECF No. 24 at 10.

rise to a tort duty of honesty and disclosure is not recognized in the usual employment relationship." *Id.* at 129.

Plaintiff has failed to identify a duty defendants owed him as an at-will employee. In his complaint, plaintiff contends that defendants misrepresented without reasonable care "that he would have several months into 2017 to resolve any issues with his employment related to the Volcker Rule" when in fact he was required to resolve these issues at the end of 2016. ECF No. 1 at 10–11. Relatedly, plaintiff asserts that defendants owed him "a duty of reasonable care with respect to his employment and his investments." *Id.* As the cases discussing at-will employment demonstrate, defendants had no duty derived from the employment relationship to be honest or to disclose particular facts to plaintiff, and they were free to discharge plaintiff at any time, even for invalid reasons. As such, plaintiff's negligence claims asserted on the basis of his employment with defendants fail to identify any particular duty owed to him under the circumstances.

Perhaps given the broad latitude with which an employer may treat an at-will employee, plaintiff's response to the motion to dismiss instead relies on the assertion that defendants breached the "'duty of ordinary care'" that every individual owes "'not to create an unreasonable risk of harm to others.'" ECF No. 24 at 10 (quoting *Laughman v. Girtakovskis*, 374 P.3d 504, 507 (Colo. App. 2015)). However, plaintiff's assertion of this broadly framed duty appears to be merely an end-run around the at-will employment context in which he asserts his negligence claims. Plaintiff has not asserted that defendants created any "unreasonable risk of harm" to him outside of those harms that arose in the employment context, and as noted, defendants did not have any duty to avoid these risks given plaintiff's status as an at-will employee. Thus, even

taking all of plaintiff's well-pleaded facts as true, his complaint simply does not plausibly establish that defendants breached the duty of ordinary care through their actions.

Because plaintiff has failed to identify any employment-related duty that defendants owed him in these circumstances or to plausibly plead a breach of the duty of ordinary care, his claims of negligent misrepresentation and negligence fail as a matter of law.[5] Accordingly, defendants' motion to dismiss plaintiff's negligent misrepresentation and negligence claims is GRANTED, and the claims are dismissed.

### C. **Count IV: Promissory Estoppel.**

Plaintiff last asserts that, in the alternative, he is entitled to recover damages from defendants on a theory of promissory estoppel. ECF No. 1 at 12. Notwithstanding a statute of frauds defense, an employee can recover on a theory of promissory estoppel if equity requires it. *Kiely v. St. Germain*, 670 P.2d 764, 768–70 (Colo. 1983). Under Colorado law, a claim for promissory estoppel consists of four elements: (1) a promise; (2) that the promisor reasonably should have expected would induce action or forbearance by the promisee or a third party; (3) on which the promisee or third party reasonably and detrimentally relied; and (4) that must be enforced in order to prevent injustice. *Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1221 (Colo. 2016). Plaintiff's complaint alleges each of these elements. However, plaintiff has failed to sufficiently plead the last two elements as required to survive defendants' motion to dismiss.

Defendants argue in their motion to dismiss that the first two elements of plaintiff's promissory estoppel claim are insufficiently pled as well as incurable. ECF No. 16 at 9–11. I disagree. I am not persuaded by defendants' argument that plaintiff's wealth advisor Ms.

---

[5] Because I find that the negligence claims fail, I need not reach the parties' argument about the application of the Economic Loss Rule. *See* ECF No. 16 at 9, No. 24 at 10, No. 27 at 5.

O'Connor and his investment manager Mr. Hojnick—both employed by Wells Fargo—necessarily lacked authority to make a promise that would bind plaintiff's employer, who was also a Wells Fargo employee. ECF No. 16 at 10. Instead I find it plausible that plaintiff might have reasonably concluded that his Wells Fargo investment advisors' promise was binding on his Wells Fargo employer. *See Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. App. 1998) (an enforceable promise must "be one that the employee could reasonably conclude constituted a commitment by the employer"). I am also not persuaded by defendants' argument that the alleged promise or promises were no more than "vague statements." ECF No. 16 at 10. Judging by plaintiff's complaint, I find that it is at least plausible that (1) defendants made a promise to plaintiff that he would have a few months into 2017 to resolve his Volcker Rule-related employment issues and that (2) defendants reasonably should have expected that the promise would induce action or forbearance by plaintiff. *See* ECF No. 1 at 12. Because plaintiff has provided "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the first two elements of promissory estoppel]," it would be inappropriate to dismiss plaintiff's claim after considering evidence of the first two elements. *Twombly*, 550 U.S. at 556.

The trouble for plaintiff begins with the third element. Plaintiff's detrimental reliance argument is conclusory and fails to meet the threshold pleading standard under *Iqbal*. Nowhere in his complaint does plaintiff plead any facts that, taken as true, show he relied on the alleged promise *to his detriment*. *See Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) ("Reliance can be shown where a party alters his or her position as a consequence of another's conduct.") (citation omitted). Plaintiff claims only that defendants' actions in December of 2016 caused him to accelerate his decision-making process with respect to the Volcker Rule, and that

15

this acceleration forced him to resign, causing "monetary damage in the form of lost wages and benefits" for the remainder of his five-year employment contract. ECF No. 1 at 11. However, plaintiff has not alleged that he would have made a different, better decision had he instead been given "several months into 2017" to make this decision. According to the complaint, plaintiff and defendants both knew what the Volcker Rule required of them, and that it was going to come into effect in July of 2017. *Id.* at 6. Absent a promise from defendants, plaintiff was still going to be forced to make the difficult decision about his investments at some point before the July deadline. The relevant inquiry is not whether plaintiff's decision to resign was unnecessarily accelerated, which, though inconvenient does not necessarily imply any detriment to plaintiff; rather, it is whether "the opportunity to conduct due diligence" would have made a difference in plaintiff's ultimate decision. *See id.* at 7. Because plaintiff has not alleged that he made a different decision in reliance on defendant's promise, he has failed to plead this element of the promissory estoppel claim.

The fourth and final element of plaintiff's promissory estoppel claim—that enforcement of the promise is necessary to prevent injustice—is also insufficiently pled. Under Colorado law, the injustice element of promissory estoppel "involves a discretionary decision for the court." *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1326 (10th Cir. 2005) (citing *Kiely*, 670 P.2d at 767). Without demonstrating how he detrimentally relied on defendants' alleged promise, plaintiff cannot show that justice requires the promise be enforced. Consequently, I cannot form an opinion as to the plausibility of plaintiff's injustice claim without more facts.

As a result, I find that plaintiff has sufficiently pled the first two elements of his promissory estoppel claim but has failed to meet the threshold pleading standard for the final two

elements. Defendants' motion to dismiss plaintiff's promissory estoppel claim is GRANTED, and this claim is dismissed.

**ORDER**

Defendants' motion to dismiss, ECF No. 16, is granted. Plaintiff's claims are dismissed. Because the Court cannot rule out the possibility that plaintiff could, in good faith, allege facts that would plausibly support one or more of his claims, this dismissal will be without prejudice and with leave to amend.

DATED this 28th day of March, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge