IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-01555-RBJ

JOHN SCHMIDT,

    Plaintiff,

v.

WELLS FARGO & COMPANY,
WELLS FARGO BANK, N.A.,
WELLS FARGO CAPITAL FINANCE, LLC, and
GLOBAL ALTERNATIVE INVESTMENTS,
a division of Wells Fargo Investments Institute, Inc,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on defendants Wells Fargo & Company; Wells Fargo Bank, N.A.; Wells Fargo Capital Finance, LLC; and Global Alternative Investments' ("defendants")[1] motion to dismiss. ECF No. 55. For the reasons stated below, the Court GRANTS defendants' motion.

### I. BACKGROUND

**A. Factual Background.**

This case boils down to a broken promise made by defendants to plaintiff John Schmidt. Plaintiff worked for Wells Fargo from 2011 to 2016 per a five-year employment contract. First

---

[1] Plaintiff dropped, either intentionally or accidentally, defendant Global Alternative Investment Services, Inc. in his First Amended Complaint. ECF No. 46 at 1. Therefore, Global Alternative Investment Services, Inc. is dismissed from this lawsuit per my previous Order on Motion to Dismiss. ECF No. 44 at 17.

1

Am. Compl., ECF No. 46 at 1.  Near the end of his five-year term, plaintiff accepted a new position as Head of Supply Chain Finance.  *Id.* at ¶20.  The terms of his new position were set forth in oral communications and in a written letter sent to plaintiff.  *Id.* at ¶21; ECF No. 56-1.  According to plaintiff, the parties agreed to a five-year contract for his new role.  ECF No. 46 at ¶23.  However, the letter that plaintiff attached as an exhibit lacks any mention of an employment agreement for a term of years.  *See* ECF No. 56-1.  According to defendants, plaintiff was an at-will employee.  ECF No. 55 at 8.

The broken promise at issue in this case concerns plaintiff's nearly $4.5 million in Wells Fargo-managed hedge funds.  ECF No. 46 at 1.  Plaintiff's investments are at issue because those investments are subject to the requirements of the "Volcker Rule."  Codified in section 619 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Volcker Rule prohibits an employee of a banking entity from investing in certain types of funds sponsored by the banking entity unless the employee is directly engaged in providing investment advisory or other services to the covered fund.  *Id.* at ¶¶24–25 (citing 12 U.S.C. § 1851(d)(1)(G)(vii)).  These restrictions became effective on July 21, 2012, but that deadline was extended to July 21, 2017.  *Id.* at ¶26.

As early as May 2015, Wells Fargo contacted plaintiff to inform him that he may remain invested in Wells Fargo-managed funds until June 30, 2017.  *Id.* at ¶29.  After discussing the upcoming redemption deadline with Wealth Advisor Liz O'Connor and Investment Manager Paul Hojnick, the plan was to analyze the impact of a redemption at the end of 2016, and then make the investment decision in the first quarter of 2017.  *Id.* at ¶32.  What actually happened is that Wells Fargo arbitrarily accelerated the Volcker Rule redemption deadline to December 31,

2016 with little notice to plaintiff. *Id.* at ¶31. Plaintiff first received notice on December 8, 2016 without any explanation for the acceleration. *Id.* at ¶39.

Due to the compressed timeline, Wells Fargo told plaintiff that it could not conduct an advance valuation of the assets, provide a financial assessment of the redemption, or provide recommendations to minimize the financial impact on plaintiff. *Id.* at ¶41. As a result, plaintiff "did not have sufficient information to decide the financial impact of the redemption and was forced to resign his employment." *Id.*

### B. Procedural Background.

On June 26, 2017 plaintiff filed a complaint asserting four claims: (1) breach of contract; (2) negligent misrepresentation; (3) negligence; and (4) promissory estoppel. ECF No. 1. On August 9, 2017 defendants filed a motion to dismiss plaintiff's complaint in its entirety. ECF No. 16. I granted that motion, but I dismissed without prejudice and with leave to amend. *Schmidt v. Wells Fargo & Co.*, No. 17-CV-01555-RBJ, 2018 WL 1522609, at *8.

In that order, I dismissed plaintiff's breach of contract claim for failing to properly plead the existence of a valid contract because his alleged oral five-year contract was void under the statute of frauds. *Id.* at *3–5. Similarly, I dismissed plaintiff's negligent representation and negligence claims because he failed to identify any employment-related duty that Wells Fargo owed him as an at-will employee. *Id.* at *6. In ruling on these first three claims, I deemed plaintiff an at-will employee because of the longstanding principle that, absent a valid employment contract, "[e]mployment in Colorado is generally at will." *Id.* (quoting *Anderson v. Regis Corp.*, 185 F. App'x 768, 771 (10th Cir. 2006) (unpublished)).

Plaintiff's last claim for relief was promissory estoppel. I held that he plausibly pled the existence of a promise and that defendants reasonably should have expected that plaintiff would rely on that promise. *Id.* at *7–8. In contrast, I held that plaintiff failed to satisfy the pleading standards for the third and fourth elements: that he detrimentally relied on the promise, and that this Court must enforce the promise to prevent injustice. *Id.* In ruling on the third element, I noted that plaintiff argues only that defendants' actions in December 2016 forced him to accelerate his decision-making process regarding redemption which forced him to resign. *Id.* But he failed to allege that had defendants given him more time, he would have made a "different, better decision." *Id.* at *7. I indicated, "The relevant inquiry is not whether plaintiff's decision to resign was unnecessarily accelerated, which, though inconvenient does not necessarily imply any detriment to plaintiff; rather, it is whether 'the opportunity to conduct due diligence' would have made a difference in plaintiff's ultimate decision." *Id.* at 16 (quoting Compl., ECF No. 1 at 7). Because plaintiff did not allege that he would have made a different decision in reliance on defendants' promise, I was unable to form an opinion as to whether justice requires that this Court enforce the promise. *Id.*

Taking advantage of the leave to amend, plaintiff filed a First Amended Complaint ("FAC") on April 10, 2018. ECF No. 46. In his FAC, plaintiff reduced his case to one claim: promissory estoppel. *Id.* at 14. Defendants move to dismiss plaintiff's remaining claim with prejudice for failure to state a claim. ECF No. 55 at 1. Plaintiff filed a response brief, ECF No. 56, and defendants filed a reply brief, ECF No. 57, to support the motion. The motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

Plaintiff's case now rests solely on his promissory estoppel claim. ECF No. 6 at 14. Promissory estoppel allows a plaintiff in limited circumstances to recover for breach of a promise even though the promise is not contained in an enforceable contract. *Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1220 (Colo. 2016). To properly plead a promissory estoppel claim in Colorado, a plaintiff must show (1) the existence of a promise; (2) that the promisor should have foreseen that the promisee would rely on the promise; (3) that the promisee relied on the promise to the promisee's detriment; and (4) that the promise must be enforced by the court to prevent injustice. *Id.* at 1221. If a plaintiff can show the existence of these four elements, the promise becomes binding as if there were an enforceable contract. *Id.*

Defendants' chief argument in their renewed motion to dismiss is that plaintiff did not cure the defect from his original complaint—namely that plaintiff failed to allege that he relied to his detriment on the alleged promises made by defendants. ECF No. 55 at 6–8. Defendants also allege that because plaintiff was an at-will employee, Wells Fargo could modify his employment terms without notice, including modifying the deadline to redeem investments subject to the Volcker Rule. *Id.* at 8–10. Finally, defendants argue that plaintiff has not sufficiently pled that injustice will result if this Court does not enforce the promise. *Id.* at 11–13.

In his response, plaintiff alleges that he did cure the defect by pleading that he relied on defendants' promises to his detriment. ECF No. 56 at 4–5. In no uncertain terms, plaintiff stated *in his response* that he "was forced to quit solely because Defendants did not fulfill their promises concerning the Volcker Rule redemption, and that he would not have quit had Defendants fulfilled these promises." *Id.* (citing FAC at ¶¶ 32-37, 47). Plaintiff then argues that injustice will ensue if this Court does not enforce the promise. He points to three acts that support this element. First, Wells Fargo allegedly decided on May 6, 2016 to change the redemption date but failed to notify plaintiff until December 2016. *Id.* at 10. Second, plaintiff reiterates that he would not have been forced to quit had Wells Fargo fulfilled its promises. *Id.* Finally, plaintiff argues that defendants did individually target plaintiff when defendants arbitrarily accelerated the redemption deadline because his hedge fund investments far exceeded those held by the other Wells Fargo employees. *Id.* Plaintiff concludes his response by arguing that defendant improperly assumed plaintiff is an at-will employee despite the Court's previous order. *Id.* at 11–13.

### A. Elements 1 and 2 of Promissory Estoppel.

Defendants do not contest that plaintiff has satisfied the first two elements of promissory estoppel. Therefore, I exclusively focus my efforts on the third and fourth elements in this order.

### B. Detrimental Reliance Element.

I ruled in my first order that plaintiff's detrimental reliance argument was too conclusory. To satisfy the threshold pleading standard under *Iqbal*, plaintiff must allege that "he would have made a different, better decision" had he been given more time to decide whether he would quit his job or redeem his investments. *Schmidt*, 2018 WL 1522609, at *7. I provided something of a roadmap by telling him that the "relevant inquiry is not whether plaintiff's decision to resign was unnecessarily accelerated, which, though inconvenient does not necessarily imply any detriment to plaintiff; rather, it is whether 'the opportunity to conduct due diligence' would have made a difference in plaintiff's ultimate decision." *Id.* (citing Compl., ECF No. 1 at 7). Plaintiff again has failed to adequately plead detrimental reliance.

It is true that plaintiff's response asserted that "he would not have quit had Defendants fulfilled [their] promises." ECF No. 56 at 5. But this assertion is notably missing from his FAC. Plaintiff cites to eight paragraphs in his FAC to support his assertion, and I will walk through each one.

- Paragraph 32 discusses the communications made by Ms. O'Connor and Mr. Hojnicki, which purportedly contained promises that Wells Fargo would provide plaintiff with financial advice regarding his hedge fund investments, and that he would have time in the first half of 2017 to make his redemption decision. ECF No. 46 at ¶32.

7

- The next paragraph went into more detail on the promises, namely that defendants told plaintiff that he could meet with Wells Fargo advisors in February 2017. At this meeting, advisors would discuss the impact of a redemption and advise plaintiff how to minimize his tax liabilities so plaintiff could remain employed by Wells Fargo. *Id.* at ¶33.
- Paragraph 34 states that plaintiff intended to remain employed as Head of Supply Chain Finance for the five-year duration of his employment agreement. As such, he asserts that Wells Fargo investment advisors understood his investment concerns. *Id.* at ¶34.
- Paragraph 35 includes notes from a quarterly meeting between plaintiff and his wealth advisors discussing plaintiff's impending redemption. *Id.* at ¶35.
- The next paragraph includes a follow-up email where Ms. O'Connor states that plaintiff's investment team agreed to continue discussions about his Volcker Rule-related redemptions during their January 2017 review meeting. *Id.* at ¶36.
- Paragraph 37 explains that Wells Fargo sent plaintiff a communication on September 26, 2016 stating that his private equity investments would be redeemed four days later. This redemption resulted in plaintiff realizing an unplanned capital gain over $100,000. *Id.* at ¶37. This first redemption represented only one-quarter of his Wells Fargo-held investments. He continued to hold nearly $3.5 million worth of Wells Fargo investments after the September 2016 redemption.[2] *See id.* at ¶38.

---

[2] According to plaintiff, defendants reinstated plaintiff's private equity investments by February 2017, thereby undoing the September 2016 redemption. ECF No. 46 at 3 n.2.

- In paragraph 46, plaintiff states that he intended to stay employed with Wells Fargo, but due to defendants' arbitrary decision to accelerate the date of redemption, plaintiff had no choice but to resign to avoid financial harm. *Id.* at ¶46.

- In the following paragraph, plaintiff again argues that had he been informed of the accelerated redemption in May 2016, or alternatively, had Wells Fargo not accelerated the redemption date, he could have made an informed evaluation of the financial impact of redemption. "In either event, Plaintiff would not have been in a position to mitigate or greatly minimize the potential tax and/or opportunity cost of the decision, and thus would not have been forced to quit his employment and would not have lost his salary, benefits, and bonuses for the remaining term of his employment agreement." *Id.* at ¶47.

After thorough review of the eight paragraphs plaintiff cites, I find that he has again failed to allege that he would have made a different decision had he been given additional time in 2017 to assess his investments. To sufficiently plead the detrimental reliance element, plaintiff must state that he would have redeemed his investments to remain employed with Wells Fargo. Saying that he was forced to quit because of insufficient time is not the same as saying he would not have quit had he known then what he knows now. The latter is required to survive a motion to dismiss a promissory estoppel claim.

In addition, plaintiff's conclusory statement in his response motion that "he would not have quit had Defendants fulfilled these promises" is insufficient. ECF No. 56 at 5. A motion to dismiss tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). It does not test the sufficiency of the allegations in plaintiff's response brief. While I must

9

construe all factual allegations in plaintiff's favor in ruling on a motion to dismiss, I cannot read facts into the complaint that don't exist. In this case, the complaint lacks any factual allegations that plaintiff would have redeemed his investments in July 2017 so he could remain employed at Wells Fargo.

Accordingly, I find that plaintiff has failed to plead this element of the promissory estoppel claim.

### C. **Injustice Element.**

I previously ruled that plaintiff had insufficiently pled the fourth element. *Schmidt*, 2018 WL 1522609, at *8. Plaintiff originally failed to satisfy this element because plaintiff did not show how he detrimentally relied on defendants' alleged promise. *Id.* Thus, I could not form an opinion as to whether injustice required me to enforce the promise. *Id.*

The same is true in plaintiff's FAC. He has not pled that he would have redeemed his $4.5 million worth of Wells Fargo investments to remain employed with Wells Fargo. Therefore, it is difficult to form an opinion as to whether I must enforce this promise to prevent injustice.

For one thing, plaintiff does not tell the Court exactly how to enforce the promise of more time. The relief sought in his FAC is actual damages and his lost salary and benefits for the remainder of his five-year term of employment. ECF No. 46 at 15. To prove actual damages, plaintiff must allege damages related to the failure of defendants to permit him to redeem his investments in July 2017. His requested damages—primarily his lost wages and benefits resulting from his forced resignation—are disconnected from the alleged promise. Plaintiff is improperly attempting to use his promissory estoppel claim as a vehicle to obtain damages that

10

he sought in his previous breach of contract claim that I have already dismissed.  This he cannot do.  *See Sheedy v. BSB Props., LC*, No. 2:13-CV-290-JNP, 2016 WL 6902492, at *3 (D. Utah Feb. 24, 2016) ("Where a contract is barred by the statute of frauds, a Plaintiff is generally not permitted to pursue a promissory estoppel claim to enforce the agreement because to do so would virtually eviscerate the effect of the statute." (citations omitted) (analyzing Utah law)).  I find that he has failed to plead any actual damages relating to the promise he asks me to enforce.

Likewise, it would be unjust for me to award salary and benefits for the remainder of his alleged five-year employment agreement because that would result in a windfall for plaintiff.  He would keep his Wells Fargo hedge fund investments and receive his Wells Fargo salary.  If defendants had kept their promise, the Volcker Rule would have required plaintiff to give up one or the other.  But under no circumstances could he keep his investments at Wells Fargo and retain his position as Head of Supply Chain Finance.

Accordingly, as this element is entirely within the Court's discretion, I find that enforcing the promise is not required to prevent injustice.

## ORDER

(1) Plaintiff's claim for promissory estoppel is dismissed with prejudice.

(2) As the prevailing parties, defendants are awarded costs to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 31st day of October, 2018.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge